1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

7

NICHOLAS J. CENCICH,

No. 10-5164 BHS/KLS

8
                              Petitioner,

**REPORT AND RECOMMENDATION**

9
        v.

**Noted for:  September 21, 2012**

10

MAGGIE MILLER-STOUT,

11
                              Respondent.

12

        Petitioner Nicholas J. Cencich filed a petition for writ of habeas corpus under 28 U.S.C. §

13

2254 challenging his 1997 conviction for first degree assault and attempted first degree murder.

14

ECF No. 7.  Respondents filed an Answer and submitted relevant portions of the state court

15

record.  ECF Nos. 30 and 31.  Having carefully considered the parties' filings and relevant

16

record, the undersigned recommends that the petition be denied and this action dismissed with

17

prejudice.

18

                                **BACKGROUND**

19

20

**A.      Statement of Facts**

21

        Mr. Cencich was convicted by jury verdicts of first degree assault and attempted first

22

degree murder.  ECF No. 31, Exhs 1 and 2.  The Washington Court of Appeals summarized the

23

facts surrounding Mr. Cencich's convictions as follows:

24

        *A.  The Underlying Crime*

25

26

                John Stocks, an attorney, and Jerry Sinks, a process server, drove to
        Cencich's home to serve Cencich with documents requiring his appearance in

REPORT AND RECOMMENDATION - 1

court for a back child support case.  Stocks and Sinks drove in Sinks's truck, leaving Stocks's car at a nearby gas station.  Stocks knew and recognized Cencich.  Shortly after they arrived at Cencich's house, Cencich arrived in his car.  Sinks approached Cencich and asked him if he was Nick Cencich.  Cencich said no.  Because he did not believe Cencich, Sinks dropped the papers in Cencich's lap and returned to the truck.

Cencich then got out of his vehicle and approached the truck, demanding that Sinks roll down the window.  When Sinks refused, Cencich wadded up the papers and threw them in the back of the truck.  Sinks then got out of the truck, grabbed the papers, and threw them onto Cencich's property.  Cencich told Sinks and Stocks that he was calling the police.  Sinks and Stocks then left Cencich's property and drove to the gas station to call 911 and explain their version of the story.

The 911 dispatcher sent a deputy to clear up the matter and told Stocks and Sinks to return to Cencich's property.  Back at Cencich's property, the two waited in Stocks's car for the deputy.  After a short time, Cencich drove up to Stocks's car and exchanged words with Stocks, who was sitting in the driver's seat. When Stocks turned to look at Sinks, who was sitting in the front passenger seat, he saw something out of the corner of his eye.  When he looked up, Cencich had a gun pointed at his head.

As Cencich fired the gun, Stocks leaned back.  The bullet missed Stocks and went in and out of Sinks's stomach, across his elbow, and into the passenger side door.

Stocks fled the scene, called 911, and drove to a nearby fire station where Sinks received medical attention.  Cencich also fled the scene, drove west on State Route 101, dismantled his gun, and threw it into some mud in Puget Sound.  Police arrested Cencich before he returned home.

*B.  Pretrial Motions and Hearings*

The State initially charged Cencich with one count of first degree assault and one count of second degree assault.  Thurston County Deputy Prosecutor John Jones [footnote 2 omitted] drafted a plea agreement, offering to recommend a 147-month sentence if Cencich pleaded guilty to one count of first degree assault and one count of second degree assault.

At Cencich's first arraignment, Jones served Cencich and Tim Healy, Cencich's pretrial counsel, with the State's plea offer, stating that "[t]he record should reflect I have served a copy of the State's offer and discovery on the defendant and Mr. Healy."  Report of Proceedings (RP) (Oct. 3, 2003) at 34.  The offer stated that, if Cencich did not accept the offer before the omnibus hearing,

REPORT AND RECOMMENDATION - 2

the State would amend the charges to first degree attempted murder and first degree assault, both with firearm enhancements.

At a bail hearing, Brett Purtzer, Cencich's trial counsel, stated that Cencich wanted to proceed to trial and argue self-defense. At the later hearing on Cencich's motion to compel the State to renew its original offer, Jones testified that the bail hearing was the first time defense counsel mentioned pursuing a self-defense strategy. Jones said that, based on his conversations with Purtzer, he understood Cencich's wish to pursue self-defense at trial as an implicit rejection of the State's plea offer. Jones testified that, after hearing Cencich wished to pursue self-defense, "[Jones] was withdrawing [the offer] at that time," even if Cencich had not rejected it. RP (Oct. 8, 2003) at 30. Jones then told the court that "if this matter was going to go to trial [,] . . . it was going to go to trial based on those charges . . . [that] probable cause [supported]." RP (Oct. 8, 2003) at 30.

Accordingly, the State amended the charges to first degree attempted murder and first degree assault, both with firearm enhancements. At the evidentiary hearing, Purtzer said that by the time of the bail hearing, he had reviewed the discovery material in light of the plea offer but he could not remember whether he discussed the offer with Cencich.

At his first trial, the jury rejected Cencich's self-defense claim and found him guilty of first degree assault and attempted first degree murder with firearm enhancements for both counts. On appeal, we remanded for a new trial on the first degree attempted murder charge because the court failed to instruct the jury on second degree attempted murder as a lesser included offense. *State v. Cencich,* 2001 Wn. App. LEXIS 329, 2001 WL 175688 (Feb. 23, 2001). We affirmed the first degree assault conviction.

Before his second trial, Cencich filed numerous motions, including a motion for the presentation of a plea offer the State made in 1997 that Cencich claimed his trial attorneys had failed to inform him about. [Court's footnote 3. Cencich appeared pro se in his second trial and for his motion to present the State's plea offer.] Cencich maintained that, at some time during the first appeal, he discovered a plea offer attached to a brief that nobody had shown to him. After the evidence hearing, the trial court denied Cencich's motion to compel the State to renew its original plea offer, ruling that the motion was based on a claim that counsel was ineffective and that Cencich failed to establish counsel's deficient performance or any resulting prejudice.

At Cencich's second trial, the jury again rejected his self-defense claim and convicted him of attempted first degree murder committed with a firearm….

REPORT AND RECOMMENDATION - 3

ECF No. 31, Exh. 3 (Opinion (2006), *State v. Cencich*, Court of Appeals Cause No. 32532-2-II, at 2-5).

**B.     Statement Of Procedural History**

    **1.     Direct Appeal Following First Trial**

At the first trial in 1997, the jury convicted Mr. Cencich of first degree assault and attempted first degree murder.  ECF No. 31, Exh. 1.  Mr. Cencich appealed to the Washington Court of Appeals.  *Id.*, Exh. 4; Exh. 5; Exh. 6.  The Washington Court of Appeals affirmed the assault conviction, but reversed the conviction for attempted first degree murder and remanded for a new trial.  *Id.*, Exh. 7.  The Washington Court of Appeals denied the prosecution's motion for reconsideration.  *Id.*, Exhs. 8 and 9.  The Washington Supreme Court denied the prosecution's petition for review on October 2, 2001. *Id.*, Exhs. 10 and 11.  The Washington Court of Appeals issued the original mandate for the appeal on October 9, 2001.  *Id.*, Exh. 12.

After issuance of the mandate, Mr. Cencich asked the Washington Court of Appeals to clarify whether the grant of a new trial concerned only the attempted first degree murder conviction or also the first degree assault conviction.  ECF No. 31, Exh. 13.  The court recalled its mandate, clarified that the earlier opinion reversed only the attempted murder conviction and ordered that the mandate would automatically reissue in 30 days if no party filed a petition for review.  *Id.*, Exh. 15.  The Washington Court of Appeals granted an extension of time to file a motion for reconsideration.  *Id.*, Exhs. 16 and 17.  Mr. Cencich moved for reconsideration, arguing that the court had not addressed his pro se appellate claims.  *Id.*, Exh. 18.  The court issued a supplemental opinion addressing the pro se claims and entered an order denying reconsideration.  *Id.*, Exhs. 19 and 20.  The court reissued the mandate on March 4, 2002.  *Id.*,

REPORT AND RECOMMENDATION - 4

Exh. 21.  The court denied Mr. Cencich's subsequent motion to again recall the mandate.  *Id.*, Exh. 22.

Mr. Cencich sought review by the Washington Supreme Court.  ECF No. 31, Exh. 23 (Petition); Exh. 24 (Answer); Exh. 25 (Reply); Exh. 26 (Proposed Petition).  The Washington Supreme Court denied review.  *Id.,* Exh. 27.  Mr. Cencich filed two motions to modify.  *Id.*, Exhs. 28 and 29.  The Supreme Court denied the motions.  *Id.*, Exh. 30.

### 2.     Direct Appeal After Second Trial

Prior to the second trial, Mr. Cencich moved to dismiss the charge based on alleged prosecutorial misconduct.  The superior court denied the motions, entering detailed findings of fact and conclusions of law.  ECF No. 31, Exhs. 31 (Brady Violation), 32 (Speedy Trial) and 33 (Attorney-Client Privilege).  Mr. Cencich also sought to reinstate a plea offer that the prosecution had withdrawn prior to the start of the first trial, arguing that his counsel failed to inform him of the plea.  The superior court denied this motion, again entering detailed findings of fact and conclusions of law.  *Id.*, Exh. 34.  At the conclusion of the second trial, the jury again convicted Mr. Cencich of the crime of attempted first degree murder.  *Id.*, Exh. 2.

Mr. Cencich appealed to the Washington Court of Appeals.  ECF No. 31, Exh. 35 (Brief of Appellant), Exh. 37 (Statement of Additional Grounds for Review).  The Washington Court of Appeals affirmed the conviction.  *Id.*, Exh. 3.  *See also* Exh. 39 (Motion for Reconsideration), Exh. 40 (Order Amending Opinion), Exh. 41 (Amended Motion for Reconsideration); Exh. 42 (Order Denying Motion to Reconsider).  Mr. Cencich sought review by the Washington Supreme Court.  *Id.*, Exh. 43.  The Washington Supreme Court denied review on October 30, 2007.  *Id.*, Exh. 44.  The Washington Court of Appeals issued its mandate on November 8, 2007.  *Id.*, Exh. 45.  Mr. Cencich moved to recall the mandate on November 3, 2008.  *Id.*, Exh. 46.  The

REPORT AND RECOMMENDATION - 5

Washington Court of Appeals denied the motion.  *Id.,* Exh. 47.  Mr. Cencich sought review by

the Washington Supreme Court of the order denying the motion to recall the mandate.  *Id.,* Exh.

48.  The Commissioner of the Washington Supreme Court denied review.  *Id.*, Exh. 49.

Mr. Cencich moved to modify the Commissioner's ruling.  ECF No. 31, Exh. 50.  The

Washington Supreme Court denied the motion to modify on September 8, 2009.  *Id.*, Exh. 51.

**3.      Personal Restraint Petition Proceedings**

**a.      Cause No. 38867-7-II & No. 83595-1**

On November 7, 2008, Mr. Cencich filed a motion for a new trial in the superior

court.  ECF No. 31, Exh. 52.  *See also* Exh. 52 (Motion for a New Trial), Exh. 53 (Plaintiff's

Memorandum in Response to Defendant's Motion for New Trial), Exh. 54 (Plaintiff's

Supplemental Memorandum in Response to Defendant's Motion for a New Trial).  Mr. Cencich

alleged he did not knowingly and intelligently waive the right to counsel.  *Id.*, Exh. 52.  The

superior court transferred the post-conviction motion to the Washington Court of Appeals for

consideration as a personal restraint petition.  *Id.*, Exh. 55; *see also* Exh. (Motion to Modify);

Exh. 57 (Order Denying Motion to Modify).  The Washington Court of Appeals transferred the

personal restraint petition to the Washington Supreme Court.  *Id.*, Exh. 58.  Mr. Cencich also

sought review by the Washington Supreme Court of the decision to transfer the matter from the

superior court to the Washington Court of Appeals.  *Id.,* Exh. 59. The Commissioner of the

Washington Supreme Court denied the personal restraint petition and denied the motion for

review as moot.  *Id.,* Exh. 60.  The Washington Supreme Court denied Mr. Cencich's motion to

modify the Commissioner's ruling on March 3, 2010.  *Id.*, Exh. 61 (Motion); Exh. 62 (Order).

The Washington Supreme Court issued a certificate of finality on March 9, 2010.  *Id.,* Exh. 63.

REPORT AND RECOMMENDATION - 6

### b.   Cause No. 38529-5-II & No. 83894-1

Mr. Cencich also filed a personal restraint petition directly in the Washington Court of Appeals.  ECF No. 31, Exh. 64 (Petition), Exh. 65 (Brief), Exh. 66 (Response), Exh. 67 (Reply).  The Washington Court of Appeals denied the petition.  *Id.*, Exh. 68.  Mr. Cencich then sought review by the Washington Supreme Court.  *Id.,* Exh. 69.

The Washington Supreme Court denied review.  *Id.,* Exh. 70; Exh. 71 (Motion to Modify); Exh. 72 (Order).  The Washington Court of Appeals issued a certificate of finality on September 9, 2010.  *Id.,* Exh. 73.

### ISSUES FOR FEDERAL REVIEW

Mr. Cencich raises nine grounds for federal habeas relief, summarized as follows:

1.      The State violated *Brady*[1] discovery rules and prejudiced Petitioner's ability to present a complete defense and right to impeach the State's witnesses with exculpable evidence.

2.      When the Court of Appeals "severed" Count 1 from Count II on remand for new trial, Petitioner was prejudiced as follows:  1) lack of fair trial before an unbiased jury; 2) insufficient proof of "specific intent" to inflict great bodily harm on Mr. Sinks (Count 1); and, 3) lack of unanimous jury verdict on Count 1

3.      The prosecutor violated the attorney-client privilege.

4.      The State forced Petitioner to choose between two or more competing rights.

5.      Petitioner was denied effective assistance of appellate counsel and right to be reappointed appellate counsel on direct review in 2001 when the Washington Court of Appeals recalled the October 9, 2001 mandate.

---

[1] *Brady v. Maryland*, 373 U.S. 83, 867 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) ("Suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment.")

REPORT AND RECOMMENDATION - 7

6.    Assigned appellate counsel provided ineffective assistance of counsel on direct review of the 2004 pretrial, guilt and sentencing phases.  Appellate counsel also rendered ineffective counsel at oral arguments on May 11, 2006.

7.    The trial court and court of appeals erred when they denied Petitioner's motion for new trial (CrR 7.8) because the pretrial record of the "*Faretta* Waiver*" hearings did not meet state and federal constitutional standards.

8.    The trial court erred when it instructed the jury regarding firearm enhancements (Jury Instruction No. 20).  The court of appeals erred in its interpretation and application of Initiate 159.

9.    Petitioner's due process rights were violated when the Washington State Court of Appeals refused to allow him to submit a Statement of Additional Grounds (RAP 10.10) on direct appeal.

ECF No. 7, at 25-48.

## EXHAUSTION OF STATE REMEDIES

Respondent concedes that Mr. Cencich has exhausted his available state remedies.  *See* ECF No. 30, at 13.

## EVIDENTIARY HEARING

"A habeas corpus petitioner is entitled to an evidentiary hearing if he has alleged facts which, if proven, would entitle him to relief and he did not receive a full and fair evidentiary hearing in a state court." *Greyson v. Kellam*, 937 F.2d 1409, 1412 (9th Cir.1991) (quoting *Norris v. Risley*, 878 F.2d 1178, 1180 (9th Cir.1989)).  The corollary to this is that no hearing is required if either the state court has reliably found the relevant facts, or there are no disputed facts and the claim presents a purely legal question. *Hendricks v. Vasquez*, 974 F.2d 1099, 1103 (9th Cir.1992), amended, reh'g denied, (9th Cir.1992).   If the state court has reliably found the relevant facts, the state court's factual determinations are entitled to a presumption of correctness.  28 U.S.C. § 2254(d).  Mr. Cencich's habeas claims present legal questions only and

REPORT AND RECOMMENDATION - 8

may be resolved by review of the state court record.  The undersigned concludes that this Court need not conduct an evidentiary hearing.

**STANDARD OF REVIEW**

Federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension.  *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). Federal habeas corpus relief does not lie for mere errors of state law.  *Estelle v. McGuire,* 502 U.S. 62, 112 S. Ct. 475 (1991); *Lewis v. Jeffers,* 497 U.S. 764, 110 S. Ct. 3092 (1990); *Pulley v. Harris,* 465 U.S. 37, 41, 104 S. Ct. 871 (1984).

A federal court cannot grant a writ of habeas corpus to a state prisoner with respect to any claim adjudicated on the merits in state court unless the state court's adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C. § 2254(d).  State court decisions must be given the benefit of the doubt.  *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S.Ct. 357 (2002).

A state court decision is "contrary to" the Supreme Court's "clearly established precedent if the state court applies a rule that contradicts the governing law set forth" in the Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and "nevertheless arrives at a result different from that precedent."  *Lockyer v. Andrade*, 538 U.S. 63, 73, 123 S.Ct. 1166 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495 (2000)).  "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous."  *Lockyer*, 538 U.S. at

1   75.  That is, "[t]he state court's application of clearly established law must be objectively

2   unreasonable."  *Id.*

3          Under 28 U.S.C. § 2254(d)(2), a federal petition for writ of *habeas corpus* also may be

4   granted "if a material factual finding of the state court reflects 'an unreasonable determination of

5   the facts in light of the evidence presented in the State court proceeding.'"  *Juan H. v. Allen*, 408

6   F.3d 1262, 1270 n.8 (9th Cir. 2005) (quoting 28 U.S.C. § 2254(d)(2)).  However, "[a]

7   determination of a factual issue made by a State court shall be presumed to be correct," and the

8   petitioner has "the burden of rebutting the presumption of correctness by clear and convincing

9   evidence."  28 U.S.C. § 2254(e)(1).

10

11         "[I]n addition to performing any analysis required by AEDPA, a federal court

12  considering a habeas petition must conduct a threshold *Teague* analysis when the issue is

13  properly raised by the state."  *Horn v. Banks*, 536 U.S. 266, 272 (2002) (citing *Teague v. Lane*,

14  489 U.S. 288 (1989) (plurality opinion)).  Under *Teague*, a "new constitutional rule[ ] of criminal

15  procedure" cannot be applied retroactively to cases on collateral review.  489 U.S. at 310.  Thus,

16  "[b]efore a state prisoner may upset his state conviction or sentence on federal collateral review,

17  he must demonstrate as a threshold matter that the court-made rule of which he seeks the benefit

18  is not 'new,'" but had been established at the time his conviction became final.  *O'Dell v.*

19  *Netherland*, 521 U.S. 151, 156 (1997).  "A holding constitutes a 'new rule' within the meaning

20  of *Teague* if it 'breaks new ground,' 'imposes a new obligation on the States or the Federal

21  Government,' or was not 'dictated by precedent existing at the time the defendant's conviction

22  became final.'"  *Graham v. Collins*, 506 U.S. 461, 467 (1993) (quoting *Teague*, 489 U.S. at 301).

23  *Teague* is subject to two exceptions.  See *Saffle v. Parks*, 494 U.S. 484, 494-95 (1990) (a "new

24  rule" can be applied retroactively on collateral review if "the rule places a class of private

25

26

REPORT AND RECOMMENDATION - 10

conduct beyond the power of the State to proscribe," or if it constitutes a "watershed rule[ ] of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding") (quoting *Teague*, 489 U.S. at 311).

## DISCUSSION

### A.   Claim 1 – Failure to Preserve Evidence

In Claim 1, Mr. Cencich refers to a *Brady* violation.  The gist of his claim, however, is that the prosecution failed to preserve evidence.  ECF No. 7, at 25.  Mr. Cencich argues that the State admitted photographic depictions of ballistic trajectory and seat positions of the vehicle into evidence and used these photographs to corroborate their witnesses' testimony but he was deprived of the opportunity to have his own forensic expert independently inspect the vehicle because the State returned the vehicle to its owner before he was assigned counsel and prior to his probable cause hearing.  ECF No. 39, at 19.  In state court, Mr. Cencich also complained about the destruction of the victim's t-shirt.  He did not raise this in his federal habeas petition and refers to it only in his reply brief.  *See* ECF No. 39, at 26-27.

On November 19, 2004, the trial court denied Mr. Cencich's motion to dismiss based on his allegation that investigating authorities failed to preserve evidence essential to his defense.  The trial court found, in pertinent part, that (1) the vehicle was searched in order to recover the bullet fired in the shooting and was used to determine the bullet's trajectory; (2) a photographic record of the bullet trajectory was made; (3) the decision to release the vehicle was not a departure from standard sheriff's procedure; (4) the vehicle was available for inspection by the defense upon request; (5) the defense did not seek to have any part of the vehicle retained as evidence or request that any measurements be made of the vehicle; (6) the vehicle was used during the trial; (7) jurors were given the opportunity to observe the vehicle

REPORT AND RECOMMENDATION - 11

with the victims sitting in the front seat as they had been sitting at the time of the shooting; (8) the red t-shirt worn by the victim at the time of the shooting was secured in evidence storage at the sheriff's office and was available for inspection by the defense; (9) neither party requested scientific examination or analysis of the t-shirt; (10) photographs of the t-shirt and not the original t-shirt were admitted at trial; (11) the t-shirt was returned to the evidence custodian at the conclusion of trial and neither party requested that the t-shirt be preserved; and (12) a few days after trial, the t-shirt was destroyed because the blood was considered a biohazard.  ECF No. 31, Exh. 31, at 2-3.  The trial court also noted that with regard to retrial, neither the State's ballistics expert nor Mr. Cencich's ballistics experts examined the vehicle or the t-shirt in 1997. "While the Acura Legend was recently located and examined by the defendant's expert, the damage to the passenger arm rest caused by the bullet was no longer present.  For purposes of the retrial, both experts have had to do without certain evidence that is no longer available." *Id.*, at 3.

When Mr. Cencich raised his claim before the Washington Court of Appeals, it rejected the claim finding that he had failed to show bad faith and the destruction of exculpatory evidence:

> Cencich argues that the trial court should have granted his motion to dismiss because the investigating authorities failed to preserve evidence essential to his defense. Specifically, he claims that the Thurston County Sheriff's Office detectives and the prosecutor deprived him of any opportunity to independently examine and inspect Stocks's car and the red tee shirt Sinks was wearing when Cencich shot him.
>
> The trial court held a hearing on this issue and ruled that the State had not failed to preserve material exculpatory evidence.  At trial, Cencich renewed his motion, which the trial court again denied, finding that police impounded Stocks's car to search for a bullet and to determine bullet trajectory; that after investigators found the bullet and took photographs to determine trajectory and the damage the bullet caused, they returned the car to Stocks; that Cencich did not ask the

REPORT AND RECOMMENDATION - 12

authorities to retain the car as evidence or ask to take measurements of the vehicle; that police retained and took photographs of Sinks's red shirt but that neither party requested specific examination or analysis of the shirt or that the shirt be preserved; that the sheriff's office destroyed the shirt after trial because it had blood stains that presented a health risk; and that since the sheriff's office had destroyed the shirt, and the car had been repaired and sold, both experts had to do without certain evidence.

The trial court concluded that (1) Cencich failed to show that either the car or the shirt constituted material exculpatory evidence, and (2) the authorities did not act in bad faith or inexcusably mishandle the destruction of the shirt and the release of the car.

The Fourteenth Amendment of the United States Constitution and article I, section 3 of the Washington Constitution require the State to preserve material exculpatory evidence in a criminal trial. *State v. Wittenbarger,* 124 Wn.2d 467, 474-75, 880 P.2d 517 (1994) (citing *California v. Trombetta,* 467 U.S. 479, 104 S. Ct. 2528, 81 L.Ed.2d 413 (1984)). If the State fails to preserve material exculpatory evidence, the trial court must dismiss criminal charges. *Wittenbarger,* 124 Wn.2d at 475. Material exculpatory evidence is evidence that, before its destruction, has apparent exculpatory value and is of "a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Wittenbarger,* 124 Wn.2d at 475, 880 P.2d 517 (citing *Trombetta,* 467 U.S. at 489). A showing that the evidence might have exonerated the defendant is insufficient. *Wittenbarger,* 124 Wn.2d at 475.

At trial, Cencich contended that he shot Sinks because he thought Sinks had pulled a gun out from underneath his black leather jacket. Cencich argues that Sinks's tee shirt was material exculpatory evidence because it had lead residue on it that would show that Sinks had a firearm. Cencich does not explain what specific exculpatory evidence he expected the car to yield, only that the car contained valuable, material, and relevant bullet trajectory evidence.

Without pointing to specific exculpatory evidence in the car, Cencich's argument fails. His general contention that the car contained bullet trajectory evidence tells us nothing about how the bullet trajectory would support Cencich's self-defense claim. The bullet trajectory would show only that Cencich fired at Sinks, a fact conclusively established by Sinks's bullet wound. It tells us nothing, at least that is readily apparent, about why Cencich fired at Sinks, the critical issue in his self-defense claim. Thus, Cencich does not show that the trajectory evidence would be even potentially useful. *See Arizona v. Youngblood,* 488 U.S. 51, 58, 109 S. Ct. 333, 102 L.Ed.2d 281 (1988). The failure to preserve potentially useful evidence does not deny a defendant due process unless the defendant can show that the State acted in bad faith. *Youngblood,* 488 U.S. at 58. Cencich makes no such showing.

REPORT AND RECOMMENDATION - 13

ECF No. 31, Exh. 3, at 14-16; *see also* Exh. 31 (trial judge's findings regarding alleged violation) .

Established federal law is not to the contrary.  "[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process."  *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).  To demonstrate a due process violation from the failure to secure and preserve evidence, the petitioner must establish: (1) that the State officials acted in bad faith; (2) that the evidence had an exculpatory value that was apparent before it was destroyed; and (3) that destruction of the evidence prejudiced the defense because the petitioner could not obtain comparable evidence by other reasonably available means.  *Villafuerte v. Lewis*, 75 F.3d 1330, 1340 (9th Cir. 1996); *United States v. Cooper*, 983 F.2d 928, 931 (9th Cir. 1993); *United States v. Sherlock*, 962 F.2d 1349, 1355 (9th Cir. 1989); *United States v. Watts*, 29 F.3d 287, 289-90 (7th Cir. 1994); *Jones v. McCaughtry*, 965 F.2d 473, 476-77 (7th Cir. 1992).

Even if the failure to retain evidence was an intentional act, that fact alone does not demonstrate bad faith.  "Neither *Youngblood* itself, nor its organizing principle, suggest that the act by which the potentially exculpatory evidence is destroyed need be inadvertent."  *United States v. Gallant*, 25 F.3d 36, 39 n. 2 (1st Cir. 1994).  The failure to comply with established policy, or even explicit instructions, does not demonstrate bad faith.  *United States v. Rambo*, 74 F.3d 948, 954 (9th Cir. 1996).  Moreover, to demonstrate a due process violation, the petitioner must show the failure to preserve evidence was material to the outcome of the case.  *United States v. Watts*, 29 F.3d 287, 290 (7th Cir. 1994).

REPORT AND RECOMMENDATION - 14

The Washington Court of Appeals' rejection of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent governing such claims.  Mr. Cencich fails to show that the State acted in bad faith and that the evidence was, in fact, exculpatory.  Therefore, Mr. Cencich is not entitled to relief on Claim 1 and it should be denied.

**B.      Claim 2 – Severance of Charges and Remand on Attempted Murder Charge**

In Claim 2, Mr. Cencich argues that the Washington Court of Appeals erred when it affirmed his assault conviction and remanded for a new trial only on the charge of attempted murder.  ECF No. 1, at 27-29.  Mr. Cencich contends that the state court improperly "severed" the two charges, eliminated the element of intent, and deprived him of a unanimous jury verdict.

Mandatory joinder or severance of charges only offends the due process clause of the United States Constitution if the proceeding is rendered fundamentally unfair.  *Comer v. Schriro*, 463 F.3d 934, 957 (9th Cir. 2006).  Normally a decision to join or sever charges is left to the sound discretion of the trial court.  *Atwood v. Schriro*, 489 F. Supp.2d 982, 1039 (D. Ariz 2007).  To establish the requisite level of prejudice, a petitioner must show that the impermissible joinder [or severance] "had a substantial and injurious effect or influence in determining the jury's verdict."  *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir.2004).

Mr. Cencich fails to show that the decision to remand the attempted first degree murder conviction without the first degree assault conviction had any "injurious effect or influence" on the jury in his second trial.  When he argued that this improper "severance" effectively eliminated the transferred intent supporting the assault conviction, the Washington Supreme Court rejected this allegation:

REPORT AND RECOMMENDATION - 15

He now urges that, when the Court of Appeals reversed the attempted first degree murder conviction, it also "eliminated" the transferred "intent" necessary to support the first degree assault conviction. Therefore, he reasons, he must be retried on both charges.

But the intent to kill necessary for attempted first degree murder is wholly separate from the intent to inflict great bodily harm necessary for first degree assault. *See* RCW 9A.32.030(1)(a); RCW 9A.36.011. Moreover, in reversing the attempted first degree murder conviction, the Court of Appeals did not suggest that the State failed to prove the necessary intent. Rather, it simply held that the trial court should have given an attempted second degree murder instruction because there was evidence that the intent was not premeditated. Premeditation is not an element of first degree assault. Consequently, reversal of the attempted first degree murder conviction did not affect the validity of the first degree assault conviction.

ECF No. 31, Exh. 27, at 4.

The Washington Court of Appeals also rejected the allegation when Mr. Cencich raised it in his recent personal restraint petition:

Fifth, Cencich argues that this court erred in its 2001 opinion when it reversed and remanded only his conviction for attempted first degree murder. He contends that the attempted murder charge and the assault charge were "married" by the doctrine of transferred intent, such that this court should have reversed and remanded his assault conviction as well. The cases he relies on, however, do not create such a "marriage" such that a reversal of the attempted murder conviction required reversal of the assault conviction. And in his 2004 trial, only the attempted murder charge was at issue. Cencich does not identify any error in the 2004 jury instructions. He fails to show that either conviction should be reversed.

ECF No. 31, Exh. 68, at 3.

The Commissioner of the Washington Supreme Court, in denying review in the personal restraint petition proceeding, noted that Mr. Cencich did not cite any authority to support "this novel proposition":

Mr. Cencich further asserts that when the Court of Appeals reversed the attempted first degree murder conviction in 2001 it should have also reversed the first degree assault conviction because the two crimes could not be severed under the doctrine of transferred intent. Mr. Cencich fails to cite any controlling or persuasive authorities for this novel proposition. Attempted first degree murder

REPORT AND RECOMMENDATION - 16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

> was the only charge at issue in Mr. Cencich's second trial.  The doctrine of
> transferred intent was not material to that charge.

ECF No. 31, Exh. 70, at 2.

We are bound by the Washington appellate courts' interpretation of RCW

9A.32.030(1)(a), RCW 9A.36.011, that the intent to kill necessary for attempted first degree

murder, is wholly separate from the intent to inflict great bodily harm necessary for first degree

assault.  A state court has the last word on the interpretation of state law, *McSherry v. Block*, 880

F.2d 1049, 1052 (9th Cir.1989), and federal habeas relief does not lie for mere errors of state

law.  *Estelle v. McGuire*, 502 U.S. 62, 67.

It is not clear whether Mr. Cencich is attempting in Claim 2 to challenge the jury

instructions (given in the first trial) that governed transferred intent.  To the extent that he is

challenging the instructions, a claim of instructional error under state law is not a basis for

federal habeas corpus relief.  *Id.*  To obtain habeas corpus relief based upon an alleged

instructional error, the petitioner must establish "not merely that the instruction is undesirable,

erroneous, or even 'universally condemned,' but that it violated some right which was

guaranteed to the defendant by the Fourteenth Amendment."  *Cupp v. Naughten*, 414 U.S. 141,

146 (1973).  The petitioner must show there is a reasonable likelihood that the alleged

instructional error caused the jury to apply the jury instructions in a way that violates the

Constitution.  *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009); *Boyde v. California,* 494

U.S. 370, 380 (1990).  "[T]he pertinent question is 'whether the ailing instruction by itself so

infected the entire trial that the resulting conviction violates due process.'"  *Waddington*, 555

U.S. at 191 (quoting *Estelle*, 502 U.S. at 72 (quoting *Cupp*, 414 U.S. at 147)).  In answering

this question, the alleged instructional error must be considered within the context of the jury

REPORT AND RECOMMENDATION - 17

1   instructions as a whole and in light of the entire trial record.  *Cupp*, 414 U.S. at 147;

2   *Waddington*, 555 U.S. at 191; *Middleton v. McNeil*, 541 U.S. 433, 437 (2004)).   If the

3   petitioner establishes the alleged instructional error rose to the level of a constitutional error,

4   the Court must determine whether the error caused actual prejudice.  *Shumway v. Payne*, 223

5   F.3d 982, 986 (9th Cir. 2000).

6         Mr. Cencich has not established any instructional error.  When he raised this issue

7   before the Washington appellate courts, they found that the jury was properly instructed on the

8   issue of transferred intent:

9

10            Cencich's final argument is that ambiguous jury instructions relieved the
       State of its burden of proving each element of first degree assault.  His complaint
11       concerns instructions 7 and 12.  Instruction 7 stated that "[a] person commits the
       crime of assault in the first degree when with intent to inflict great bodily harm,
12       he or she assaults another with a firearm."  [footnote omitted]  Instruction 12 set
       forth the doctrine of transferred intent:
13

14            If a person intends to assault a particular individual with a firearm
            with intent to inflict great bodily harm, and by mistake,
15            inadvertence, or indifference, the assault with the firearm took
            effect upon an unintended individual, the law holds that the intent
16            to inflict great bodily harm with the firearm is transferred to the
            unintended individual.  An intent against one victim is intent
17            against all victims.  [footnote omitted]

18

19            Cencich argues for the first time that these instructions failed to ensure
       that the jury found that he intended to assault Stocks before that intent transferred
20       to Sinks and that they therefore relieved the State of the burden of proving intent.
       Although Cencich took exception to neither instruction at trial, his claim will be
21       addressed because it concerns an issue of constitutional magnitude.  [footnote
       omitted]
22

23            Instruction 7 is based on a pattern instruction and is an accurate statement
       of the law.  [footnote omitted]  Both  it and the court's "to convict" instruction
24       made it clear that the State had to prove Cencich intended to inflict great bodily
       harm to convict him of first degree assault.  [footnote omitted]  To prove the
25       element of an intentional assault, there must be evidence of the defendant's
       specific intent.  [footnote omitted]  Once the State has proven the intent to inflict
26       great bodily harm upon one victim, the mens rea may be transferred to any

REPORT AND RECOMMENDATION - 18

unintended victim.  [footnote omitted]  The State's theory at trial was that
Cencich shot Sinks while attempting to shoot Stocks, and the evidence clearly
supported that theory.  Although the transferred intent instruction was not
necessary, it reinforced the principle that unintended victims are assaulted if they
fall within the terms and conditions of the assault statute.  [footnote omitted]  The
instructions at issue were not ambiguous.

ECF 31, Exh. 19, at 7-8.

Mr. Cencich also claims that the state appellate court's decision to affirm the assault
conviction and remand only the attempted murder charge violated a right to a unanimous
verdict on the element of intent. This allegation is also not based upon clearly established
federal law.  As the Supreme Court has recognized, "[o]ur cases reflect a long-established rule
of the criminal law that an indictment need not specify which overt act, among several named,
was the means by which a crime was committed."  *Schad v. Arizona*, 501 U.S. 624, 631 (1991).
"[T]here is no general requirement that the jury reach agreement on the preliminary factual
issues which underlie the verdict."  *Id*. at 632.  As the Supreme Court explained:

> "[A] federal jury need not always decide unanimously which of several possible
> sets of underlying brute facts make up a particular element, say, which of several
> possible means the defendant used to commit an element of the crime."  *Schad v.
> Arizona*, 501 U.S. 624, 631-32, 111 S. Ct. 2491, 115 L. Ed. 2d 555 (1991)
> (plurality opinion); *Andersen v. United States*, 170 U.S. 481, 499-501, 18 S. Ct.
> 689, 42 L. Ed. 1116 (1898).  Where, for example, an element of robbery is force
> or the threat of force, some jurors might conclude that the defendant used a knife
> to create the threat; others might conclude he used a gun.  But that disagreement –
> a disagreement about means – would not matter as long as all 12 jurors
> unanimously concluded that the Government had proved the necessary related
> element, namely, that the defendant had threatened force.  *See McKoy v. North
> Carolina*, 494 U.S. 443, 449, 110 S. Ct. 1227, 108 L. Ed. 2d 369 (1990)
> (Blackmun, J., concurring).

*Richardson v. United States*, 526 U.S. 813, 817 (1999).

There is no clearly established right to jury unanimity.  "The Supreme Court has not
held that the Constitution imposes a jury unanimity requirement."  *Hoover v. Johnson*, 193

REPORT AND RECOMMENDATION - 19

F.3d 366, 369 (5th Cir. 1999).  As this allegation is not based upon clearly established federal law, Mr. Cencich is not entitled to relief on this theory.

Mr. Cencich has not shown that the decisions of the Washington courts of appeal were either contrary to or an unreasonable application of, clearly established federal law governing his claims.  Mr. Cencich is not entitled to relief on Claim 2 and this claim should be denied.

## C.    Claim 3 – Attorney-Client Privilege

In his third claim, Mr. Cenich alleges that the prosecutor violated the attorney-client privilege by reading privileged documents.  ECF No. 7, at 31-32.  Mr. Cencich moved in the trial court to dismiss the charges against him based on a violation of the attorney-client privilege.  The Thurston County Superior Court entered the following Findings of Fact and Conclusions of Law regarding Mr. Cencich's motion:

FINDINGS OF FACT

1.      At a pretrial hearing in the above cause on October 8, 2003, there was a complaint made to the Court by the defendant that the Thurston County Office of Assigned Counsel was unnecessarily delaying the process of providing funds for a defense ballistics expert.  The matter was left to be further discussed at the continuation of the pretrial hearing on October 9, 2003.

2.      On October 9, 2003, prior to the resumption of the pretrial hearing, a representative of the Office of Assigned Counsel provided certain documents, pertaining to correspondence by Nicholas Cencich or his standby attorney in this case, to the defense, court, and to the prosecution.  Those documents have been sealed and retained by the court for later appellate review.

3.      Due to a miscommunication regarding what was being requested in order to address the defendant's lack of a ballistics expert, some work product material was included in the records provided.  The State did not anticipate that the scope of the documents included in what was provided by the Office of Assigned Counsel would include such work product material.

4.      Shortly after the start of the October 9, 2003 pretrial hearing, the Defendant notified the court that some of the documents provided by the Office of assigned Counsel contained defense work product, and objected to these

REPORT AND RECOMMENDATION - 20

documents having been presented to the prosecution.  The Court quickly ordered the prosecutor to hand back its copy to the Office of Assigned counsel's representative.  The court then sealed its own copy.  However, for purposes of the Court's ruling on the Defendant's present motion to dismiss, it is assumed that all of the provided documents were viewed by the deputy prosecutor.

5.    To the extent any expert witness was ultimately appointed to testify for the defense at trial, the name of such expert and any discovery material pertaining to the opinions reached by such expert would have to be provided to the prosecution prior to trial.

6.    Any suggestions to the defendant by his standby counsel contained within these records would only constitute advice which the defendant was free to accept or disregard.  Such suggestions would not constitute a statement of the defendant's tactical decisions.

7.    None of the documents contained in the sealed file are such that their disclosure to the prosecution would have given the State an unfair advantage at trial.

Based on the above Findings of Fact, the Court hereby enters the following:

CONCLUSIONS OF LAW

1.    Assuming that the material contained in the sealed file was viewed by the deputy prosecutor before it was returned, such disclosure of that material would not have prejudiced the defendant's presentation of the defense case at trial, nor would it have materially affected the defendant's right to a fair trial.

2.    The defendant's motion to dismiss is therefore denied.

ECF No. 31, Exh. 33, at 1-3.

The Washington Court of Appeals subsequently rejected the claim in the recent

personal restraint petition proceedings:

Sixth, Cencich argues that the trial court erred in denying his motion to dismiss following his discovery that, during a hearing on his request for expert services, a deputy prosecutor was reviewing correspondence between Cencich and the Office of Assigned Counsel.  He contends that his attorney-client privilege was violated and that the charges should have been dismissed.  However, assuming that the privilege was violated when the OAC counsel allowed the deputy prosecutor to review the correspondence, Cencich has not shown that any

REPORT AND RECOMMENDATION - 21

prejudice resulted from that violation. *State v. Webbe*, 122 Wn. App. 683, 698, 94 P.3d 994 (2004). There is no evidence that the State intentionally intruded into Cencich's privileged communications, such that prejudice would be presumed and reversal would be required.

ECF No. 31, Exh. 68, at 3-4.

The Commissioner of the Washington Supreme Court agreed with the decision of the Washington Court of Appeals:

> Mr. Cencich further claims the State violated his attorney-client privilege, justifying reversal of his attempted murder conviction. This claim is based on a deputy prosecutor's review of correspondence between Mr. Cencich and the Office of Assigned Counsel during a hearing. Mr. Cencich fails to show that the apparently inadvertent intrusion revealed a defense theory or argument causing him any prejudice. *See State v. Webbe*, 122 Wn. App. 683, 697-98, 94 P.3d 994 (2004).

ECF No. 31, Exh. 70, at 3.

It is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire,* 502 U.S., at 67–68, 112 S.Ct. 475. "[F]ederal habeas corpus relief does not lie for errors of state law." *Id.* at 67 (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990)). This Court is bound by the Washington appellate courts' interpretation of Washington law. *Aponte v. Gomez,* 993 F.2d 705, 707 (9th Cir. 1993). Accordingly, any challenge to the disclosure of information, in violation of Mr. Cencich's attorney-client privilege, is not cognizable in this federal habeas proceeding.

The standard for determining whether relief must be granted on federal habeas review is whether any claimed error "had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993) (quoting *Kotteakos v. United*

REPORT AND RECOMMENDATION - 22

*States*, 328 U.S. 750, 776 (1946)).  In this case, the Washington Supreme Court concluded that

Mr. Cencich failed to show that the apparent inadvertent review of correspondence by the

prosecutor revealed any defense theory, argument, or had in any other way caused him any

prejudice.  Therefore, there was no clearly established constitutional error.

    This Court has thoroughly reviewed the record and concurs that, even assuming Mr.

Cencich could establish an error of constitutional dimension, he has not established that such an

error had a substantial and injurious effect on determining the jury's verdict.  Accordingly, his

federal habeas petition should be denied with respect to Claim 3.

**D.    Claim 4 – Hobson's Choice Between Speedy Trial and Expert Services**

    In Claim 4, Mr. Cencich alleges that he was forced to choose between a speedy trial and

receiving expert services.  ECF No. 7, at 33-35.  Mr. Cencich argues that the state trial court

forced him to forego his rights under the state speedy trial rule by delaying ruling on his

request for expert services.   The Washington Court of Appeals rejected this claim:

> Second, Cencich argues that the trial court violated his speedy trial rights
> under former CrR 3.3 when it reset his trial date beyond the speedy trial period
> after removing Cencich's standby counsel.  He contends that the pre-2003 version
> of CrR 3.3 applies, *State v. Laureano*, 101 Wn.2d 745, 753, 682 P.2d 889 (1984),
> and that the trial court should only have granted a five-day extension of his speed
> trial period, *State v. Watkins*, 71 Wn. App. 164, 175, 857 P.2d 300 (1993).  He is
> mistaken on both counts.  The 2003 version of CrR 3.3 became effective on
> September 1, 2003, and applies to all cases pending on that day, regardless of
> when the crime was allegedly committed.  *State v. Olmos*, 129 Wn. App. 75, 756-
> 57, 120 P.3d 139 (2005).  And under CrR 3.3(c)(2)(vii), the disqualification of
> counsel resets the commencement date of the speedy trial period.
>
> Third, Cencich argues that the trial court forced him into an
> unconstitutional Hobson's choice by delaying its approval of his requests for a
> ballistics expert and for additional investigator services until two weeks before his
> trial date.  He contends he was forced to waive his right to a speedy trial by
> agreeing to a continuance to allow his ballistics expert and investigator time to
> conduct their investigations.  However, the lateness of the trial court's approval
> was largely the result of the multitude of requests for expert services that Cencich

made.  He was not placed in a Hobson's choice.  And, as noted above, the disqualification of his stand by counsel reset the speedy trial period.

ECF No. 31, Exh. 68, at 2.

Mr. Cencich fails to show he was forced to choose between two constitutional rights. The speedy trial rule is a state law rule, and the alleged state law violation is not a basis for federal habeas corpus relief.  *Estelle*, 502 U.S. at 67.  Moreover, the state court determination that the speedy trial period had reset is binding on the federal courts.  *Bradshaw*, 546 U.S. at 76.  Mr. Cencich cannot show he was forced to forego any right under the state speedy trial rule as the speedy trial period had reset.  Moreover, the state court reasonably determined that the timing of the trial judge's ruling on the request expert services was due to Mr. Cencich's own actions in making numerous requests for expert services.  As the speedy trial period had reset, the timing of the trial judge's ruling did not force Mr. Cencich to choose between two rights.

Mr. Cencich is not entitled to relief under 28 U.S.C. § 2254(d) and Claim 4 should be denied.

**E.    Claims 5 and 6 – Ineffective Assistance of Appellate Counsel**

Under 28 U.S.C. § 2254(d), the Court owes a high level of deference to state court adjudication of claims of ineffective assistance of counsel.  *Yarborough v. Gentry*, 540 U.S. 1 (2003) (per curiam).  "If a state court has already rejected an ineffective-assistance claim, a federal court may grant habeas relief if the decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'"  *Id.* at 5.  Because counsel has wide latitude in deciding how to

REPORT AND RECOMMENDATION - 24

represent a client, judicial review of counsel's representation must be highly deferential. *Id.* at

6. Review is "doubly deferential when it is conducted through the lens of federal habeas." *Id.*

Like a claim of ineffective trial counsel, the claim of ineffective assistance of appellate counsel

is reviewed under a two-prong standard. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000);

*Smith v. Murray*, 477 U.S. 527, 536 (1986); *Smith v. Robbins*, 528 U.S. 259 (2000).  The

petitioner must first prove that counsel's performance fell below an objective standard of

reasonableness. *Flores-Ortega*, 528 U.S. at 477.  The Court must judge the reasonableness of

counsel's conduct on the facts of the case, viewed as of the time of counsel's conduct.  *Id.*

"[J]udicial scrutiny of counsel's performance must be highly deferential." *Id.* (quoting

*Strickland*, 466 U.S. at 689).  The petitioner must also show counsel's deficient performance

caused prejudice. *Flores-Ortega*, 528 U.S. at 477.

To provide effective representation, counsel is not required to raise every non-frivolous

argument or colorable issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 750-54 (1983).  Indeed,

the process of winnowing out weaker arguments on appeal and focusing on those issues more

likely to succeed is the hallmark of effective advocacy. *Jones*, 463 U.S. at 751-52.  "[A]

lawyer who throws in every arguable point – 'just in case' – is likely to serve her client less

effectively than one who concentrates solely on the strong arguments." *Miller v. Keeney*, 882

F.2d 1428, 1434 (9th Cir. 1989).

(1)     Claim 5 – "Reappointment" of Appellate Counsel

In Claim 5, Mr. Cencich alleges that the state court did not "reappoint" counsel

on direct appeal.  ECF No. 7, at 36-38.  However, Mr. Cencich was represented by counsel,

Brett A. Purtzer, in the Washington Court of Appeals.  *See* ECF No. 31, Exh. 4 (brief filed by

counsel).  To the extent the claim alleges that the Washington Court of Appeals had to

REPORT AND RECOMMENDATION - 25

"reappoint" Mr. Purtzer when the court recalled its mandate for the limited purpose of filing a

supplemental opinion addressing the pro se issues, this claim is not based upon clearly

established federal law.  There is no Supreme Court case that holds the court must "reappoint"

counsel simply when the state court recalls its mandate to issue a supplemental opinion.  As the

Washington Supreme Court ruled:

> Mr. Cencich next contends that his right to appellate counsel was violated
> when the Court of Appeals withdrew the mandate on its 2001 decision, denied his
> motion for reconsideration, and issued a supplemental decision addressing pro se
> issues overlooked in the original decision.  Mr. Cencich contends the withdrawn
> mandate vacated the first appeal, thus providing him an opportunity to appeal
> anew with the assistance of counsel.  He is mistaken.  The Court of Appeals
> withdrew the mandate for the limited purpose of addressing and rejecting Mr.
> Cencich's previously overlooked pro se arguments.

ECF No. 31, Exh. 70, at 2.

Mr. Cencich fails to show the state court decision was contrary to or an unreasonable

application of clearly established federal law as determined by the Supreme Court.   He is not

entitled to relief under 28 U.S.C. § 2254(d) on Claim 5 and it should be denied.

(2)      Claim 6 – Ineffective Briefing on Appeal

In Claim 6, Mr. Cencich alleges that his appellate counsel failed to effectively

brief meritorious issues on direct appeal.  ECF No. 7, at 39-40.   The Washington Court of

Appeals rejected this claim as follows:

> Seventh, Cencich argues that his appointed appellate counsel provided
> ineffective assistance of counsel when she did not brief and argues the "guilt-
> phase trial issues" that he asked her to include.  To establish ineffective assistance
> of counsel, Cencich must establish both that his counsel's performance fell below
> an objective standard of reasonableness and that but for that deficient
> performance, the result of the appeal probably would have been different.  *State v.
> Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987).  As to the "State's plea
> offer" issue, his counsel briefed and argued that issue.  The fact that she did not
> prevail does not show either deficient performance or resulting prejudice.  As to
> the remaining issues that Cencich wanted her to brief and argue, Cencich had the

REPORT AND RECOMMENDATION - 26

opportunity to bring those before the court through his SAG.  And had Cencich
contained his prolixity, he could have raised all of them within the 50 page limit
for a SAG.  Cencich does not show that his appellate counsel provided ineffective
assistance of counsel when she elected to pursue potentially meritorious
arguments rather than pursuing the non-meritorious issues that Cencich provided.

ECF No. 31, Exh. 68, at 4.

In denying review, the Commissioner of the Washington Supreme Court agreed that

Mr. Cencich failed to show deficient representation and prejudice:

Mr. Cencich next asserts that appellate counsel was ineffective in not
raising an argument based on a plea offer from the State.  What argument counsel
should have raised is somewhat obscure.  It seems clear, however, that Mr.
Cencich was determined to seek an outright acquittal regardless of any plea offer.
In any event, Mr. Cencich fails to identify any potentially meritorious arguments
that appellate counsel should have raised but did not, or, if such arguments
existed, that he was prejudiced by counsel's failure to raise them.  *See In re Pers.
Restraint of Maxfield*, 133 Wn.2d 332, 344, 945 P.2d 196 (1997).

ECF No. 31, Exh. 70, at 3.

Mr. Cencich argues here that "appellate counsel refused to brief any trial or sentencing

phase meritorious issues as requested by the petitioner."  ECF No. 7, at 39.  However, as noted

above, counsel is not required to raise every non-frivolous argument or colorable issue on

appeal.  *Jones v. Barnes*, 463 U.S. at 750-54.  As noted by the Washington appellate courts,

Mr. Cencich's appellate counsel briefed and argued the State's plea offer and he admits that the

issues his "appellate attorney failed to brief were raised pro se."  ECF No. 39, at 30.  Therefore,

all of his arguments, whether raised by his appellate counsel or by himself, were before the

Washington courts.  Mr. Cencich fails to show the state court adjudication was an unreasonable

application of clearly established federal law.  Claims 5 and 6 should be denied.

REPORT AND RECOMMENDATION - 27

**F.     Claim 7 – Sixth Amendment Right to Counsel**

In his seventh claim, Mr. Cencich alleges that he did not make a valid waiver of the right to counsel when he represented himself in his second trial.  ECF No. 7, at 41-42.

The Sixth Amendment affords a criminal defendant the right to self-representation. *Faretta v. California*, 422 U.S. 806, 817–21, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).  A defendant invoking the right to self-representation must "knowingly and intelligently" forgo the benefits associated with the right to counsel.  *Id*. at 835 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464–65, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)).  He must, therefore, be "made aware of the nature of the charges against him, the possible penalties, and the risks of self-representation."  *United States v. Mendez–Sanchez*, 563 F.3d 935, 944–45 (9th Cir.2009).

The request for self-representation must also be unequivocal.  *Id*. at 945–46.  See also *Stenson v. Lambert*, 504 F.3d 873, 882 (9th Cir.2007) ("We also have held that *Faretta* requires a defendant's request for self-representation be unequivocal, timely, and not for purposes of delay.") (citing *United States v. Erskine*, 355 F.3d 1161, 1167 (9th Cir.2004)). This requirement both avoids the inadvertent waiver of counsel "through occasional musings on the benefit of self-representation" and prevents manipulation of the mutually exclusive rights to counsel and self-representation by forcing a defendant to make an explicit choice. *Adams v. Carroll*, 875 F.2d 1441, 1444 (9th Cir.1989).  "If [the defendant] equivocates, he is presumed to have requested the assistance of counsel."  *Id*.

The right to self-representation does not occupy a "hallowed status similar to the right to counsel enshrined in the Sixth Amendment."  *Sandoval v. Calderon*, 241 F.3d 765, 773–74 (9th Cir.2001).  "Thus, in light of the disfavored status the right to self-representation enjoys *vis-a-vis* the right to counsel, there is no rule that a defendant who has once expressed a desire

REPORT AND RECOMMENDATION - 28

for self-representation must be cautioned or addressed personally before receiving the assistance of counsel." *Id*. at 774.  Where circumstances indicate the defendant has changed his or her mind about self-representation, the trial court need not engage in a personal colloquy to ensure that the defendant has knowingly and voluntarily withdrawn a demand for self-representation.  *Id*. at 775.

Whether a defendant unequivocally requested self-representation is a question of fact. *United States v. Kienenberger*, 13 F.3d 1354, 1356 (9th Cir.1994).   The trial court's determination of the factual issue is presumed correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

Prior to his second trial, Mr. Cencich filed a written motion for leave to proceed pro se. The motion was supported by a written affidavit, in which Mr. Cencich stated, in part, the following:

> 2.     That I believe that in matters involving accusations of criminal activity of the nature as the charges in this case, the only defense that can and should be pursued is the best and optimum defense aimed at securing an acquittal of all charges.  I am of the opinion that the only way such an optimum defense is possible is for me to be permitted to act as pro se defense counsel and to function as an attorney in my own defense in the instant matter.

> 3.     That necessary to the defense against the charges made against me, is the establishment of the facts of this case.  That in order to be able to fully establish the facts of this case, a participatory role is imperative in the upcoming trial.

> 4.     That I have endured one previous trial concerning the same matter which will come before this Court and I was represented by an attorney in good standing with the Washington State Bar Association.  That regardless of the skill and preparation such an attorney may make, these "Bar Associated attorneys" can never match the knowledge and familiarity with the facts, nor the general awareness of the instant case that I presently have.  Even more importantly, however in spite of the empathy and concern these attorneys may have in striving to defend me, it is impossible for these attorneys to have the same degree of

REPORT AND RECOMMENDATION - 29

interest and concern regarding achieving an acquittal of all alleged charges as I have.

…

6.    That I having been present at a previous trial have become quite aware of the nature of the court, and particularly, trail proceedings.  Furthermore, throughout the majority of my professional career, and having been present at a previous trial, I have become fully familiar with the order and decorum attendant to such proceedings. … Upon order of the Court granting my constitutional right to act as pro se defense counsel and to function as an attorney in the instant matter, I will conduct myself with the intent to comport my behavior with my desire to proceed as efficiently as possible in an effort to establish and maintain fair and effective judicial procedure in the interest of justice.

7.    I am currently incarcerated against my will and have very limited physical freedoms … I respectively [sic] request the court to appoint "standby counsel" ….

*See, e.g.,* ECF No. 31, Exh. 23, Appendix P:

The Commissioner of the Washington Supreme Court rejected Mr. Cencich's claim that he did not make a valid waiver of the right to counsel when he represented himself in the second trial:

Exercise of a defendant's right to self-representation must be premised on a knowing, voluntary, and intelligent waiver of the defendant's right to counsel. *See Faretta v. California*, 422 U.S. 806, 807, 835, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975).  Before granting a request to proceed pro se, the trial court must ascertain the defendant's understanding of the risks involved in self-representation, so that the defendant can make that decision knowingly and intelligently.  *Faretta*, 422 U.S. at 835.  To be valid, a defendant's request to proceed pro se must be unequivocal.  *State v. DeWeese*, 117 Wn.2d 369, 377, 816 P.2d 1 (1991).

Prior to his second trial, Mr. Cencich submitted a written motion for leave to proceed pro se.  The motion was supported by an emphatic and well-written argument asserting that Mr. Cencich had knowledge of the case and self motivation superior to that of any available defense attorney.  Mr. Cencich supported his motion with an articulate affidavit explaining in detail why he believed his interests would be best served by representing himself with the limited assistance of standby counsel.

REPORT AND RECOMMENDATION - 30

The trial court examined the written submission and engaged in an extensive colloquy with Mr. Cencich. The court and Mr. Cencich discussed the challenges of self-representation while incarcerated in jail. Mr. Cencich advised the court that he had spent his previous incarceration familiarizing himself with pertinent legal issues, and he felt that he was intimately familiar with the facts and legal issues as a result of the previous trial. He also informed the court that he had testified as a mental health professional in numerous courtrooms around the state. Mr. Cencich stated that he already possessed relevant legal reference materials, including court rules and a widely-used handbook on evidence, and could obtain other reference material with the assistance of standby counsel.

The trial court advised Mr. Cencich that standby counsel would probably not be able to assist him in making timely objections during the heat of trial. Mr. Cencich indicated his understanding of that challenge. The court also reminded Mr. Cencich that he was represented by counsel at his first trial and was convicted. He acknowledged that he still had to serve a significant amount of time on his unaffected conviction, so he was willing to undertake the risk of representing himself on retrial on the unresolved count. Though extensively informed of the challenges facing him, Mr. Cencich consistently and emphatically asserted his right to self-representation.

Mr. Cencich's trial was delayed because the Court of Appeals temporarily recalled the mandate. After the mandate was reissued, the trial court held another pretrial hearing where confusion arose over Mr. Cencich's pro se status. Another attorney had entered a notice of appearance, mistakenly thinking Mr. Cencich and his family wanted to retain him to represent Mr. Cencich. That attorney notified the trial court that he was withdrawing, explaining that the confusion was the result of miscommunication. Mr. Cencich confirmed that to be the case, and he reaffirmed that he wished to proceed pro se with standby counsel.

At the State's urging, the trial court asked Mr. Cencich if he wanted to continue pro se. Mr. Cencich confirmed that he did. The court admonished Mr. Cencich that it did not want him complaining the week before trial that he was unprepared and needed defense counsel to take over. Mr. Cencich assured the court that with the aid of reference materials currently available, the advice of standby counsel, and his own accumulated knowledge, he would be ready. The trial court found that even without legal training Mr. Cencich had adequate ability to read and understand the rules of procedure and the rules of evidence and otherwise had a proper demeanor.

The record amply demonstrates that Mr. Cencich made a knowing, voluntary, and intelligent decision to represent himself. There was nothing equivocal about his request. The trial court did not err in granting the request.

ECF No. 31, Exh. 60, at 2-4.

REPORT AND RECOMMENDATION - 31

1      Mr. Cencich fails to provide any evidence, let alone clear and convincing evidence,

2  rebutting the trial court's determination of this factual issue.  He merely states now that he did

3  not waive his right to trial counsel.  This conclusory assertion does not suffice to rebut the

4  presumption of correctness.  See generally *James v. Borg*, 24 F.3d 20, 26 (9th Cir.1994)

5  ("Conclusory allegations which are not supported by a statement of specific facts do not

6  warrant habeas relief.")

7      Nor does Mr. Cencich establish that the state courts' adjudication of this issue was

8  objectively unreasonable.  In fact, the Washington courts' conclusion can be deemed

9  reasonable under the circumstances. See, e.g., *United States v. Kienenberger*, 13 F.3d 1354,

10  1356 (9th Cir.1994) (defendant's requests for self-representation deemed equivocal where

11  accompanied with insistence on "advisory" or "standby" counsel).  The record reflects that Mr.

12  Cencich emphatically, clearly, and most strongly asserted his desire to proceed pro se in his

13  second trial.  Mr. Cencich is not entitled to relief under 28 U.S.C. § 2254(d) and Claim 7

14  should be denied.

15  **G.      Claim 8 – Firearm Sentencing Enhancement**

16      In Claim 8, Mr. Cencich alleges that the trial court erred in instructing the jury on the

17  firearm sentencing enhancement.  He claims that the firearm sentencing enhancement is

18  contrary to the voters' intent in passing Initiative 159, which applies only to "criminals", he

19  lawfully owned the gun and had a concealed weapons permit, and only shot the gun out of fear

20  for his own life.  ECF No. 7, at 45-46.

21      The Washington Court of Appeals rejected this argument because Mr. Cencich offered

22  no meaningful argument to support this novel proposition:

REPORT AND RECOMMENDATION - 32

1
2
3
4

Cencich contends that the trial court erred by instructing the jury on the firearm enhancement and by imposing a 60-month firearm enhancement. He claims that the firearm enhancement in his case was contrary to the voters' intent in passing Initiative 159 because he lawfully owned a firearm and had a concealed weapons permit. Again, Cencich provides no meaningful argument to support this novel proposition and we decline to address it. RAP 10.10(c).

5     ECF No. 31, Exh. 3

6
7     To the extent that Mr. Cencich is attempting to challenge the jury instruction regarding
8     the firearm sentencing enhancement, the undersigned likewise finds that Mr. Cencich has offered
9     no meaningful argument to support his claim that the instruction was faulty. Moreover, a claim
10    of instructional error under state law is not a basis for federal habeas corpus relief. *Estelle v.*
11    *McGuire*, 502 U.S. 62, 67. To obtain habeas corpus relief based upon an alleged instructional
12    error, the petitioner must establish "not merely that the instruction is undesirable, erroneous, or
13    even 'universally condemned,' but that it violated some right which was guaranteed to the
14    defendant by the Fourteenth Amendment." *Cupp v. Naughten*, 414 U.S. 141, 146 (1973). The
15    petitioner must show there is a reasonable likelihood that the alleged instructional error caused
16    the jury to apply the jury instructions in a way that violates the Constitution. *Waddington v.*
17    *Sarausad*, 129 S. Ct. 823, 831-32 (2009); *Boyde v. California,* 494 U.S. 370, 380 (1990). "[T]he
18    pertinent question is 'whether the ailing instruction by itself so infected the entire trial that the
19    resulting conviction violates due process.'" *Waddington*, 129 S. Ct. at 832 (quoting *Estelle*, 502
20    U.S. at 72 (quoting *Cupp*, 414 U.S. at 147)). Mr. Cencich has not established any instructional
21    error.
22
23    To the extent that Mr. Cencich is claiming that the firearm sentencing enhancement
24    does not apply to him, the allegation similarly raises an issue of state law that does not
25    establish a basis for federal habeas relief. *Estelle*, 502 U.S. at 67. Moreover, the state court
26

REPORT AND RECOMMENDATION - 33

determination that the enhancement applies is binding on the federal courts.  *Bradshaw*, 546

U.S. at 76.   The misapplication of state law results in a due process violation only if a sentence

is arbitrary and capricious.  *Richmond v. Lewis*, 506 U.S. 40, 50, 113 S.Ct. 528, 121 L.Ed.2d

411 (1992). Relief is only available when the sentencing is arbitrary or fundamentally unfair.

*Newton v. Superior Court*, 803 F.2d 1051, 1055 (9th Cir.1986).

To the extent that Mr. Cencich is claiming that the firearm sentencing enhancement

violates his rights under the Second Amendment, the claim is not based upon clearly

established federal law.  The Supreme Court has not held that state firearm sentencing

enhancements violate the Second Amendment.  The claim would require the announcement of

a new rule.  Consequently, relief is barred under both 28 U.S.C. § 2254(d) and *Teague v. Lane*,

489 U.S. at 301 (A "new rule" is one that "breaks new ground," "imposes a new obligation on

the States or the Federal Government," or "was not *dictated* by precedent existing at the time

the defendant's conviction became final.")

Moreover, the Second Amendment protects only the personal right to keep and bear

arms for *lawful* purposes."  *McDonald v. City of Chicago*, —— U.S. ——, 130 S.Ct. 3020,

3044, 177 L.Ed.2d 894 (2010) (plurality) (emphasis added).

## H.     Claim 9 – Right to File Pro Se Statement of Additional Grounds

In his final claim, Mr. Cencich argues that he has a state and federal constitutional right

to present his claims on direct appeal.  ECF No. 7, at 48-50.    His claim is without merit.

Mr. Cencich has a right to self-representation on appeal in the State of Washington.

*State v. Rafay,* 167 Wash.2d 644, 222 P.3d 86 (Dec. 10, 2009) (Washington State constitution

guarantees criminally accused right of self-representation on appeal).  It does not appear that

his right to do so was infringed upon.  The record reflects that he filed a 29-page pro se brief in

REPORT AND RECOMMENDATION - 34

the Washington Court of Appeals in his direct appeal following his first trial on June 1, 1999.

ECF No. 31, Exh. 5.  He also filed a 40-page statement of additional grounds with multiple

appendices in the Washington Court of Appeals in his direct appeal following his second trial

on January 17, 2006.  ECF No. 31, Exh. 37.  The Court of Appeals declined to consider several

of the issues because the statement violated the 50-page limit of Washington's rules of

appellate procedure 10.10 and failed within the 50-page limit to adequately inform the court of

the nature and occurrence of the alleged errors.  Mr. Cencich submitted "a statement exceeding

200 pages.  As to each issue raised in the statement he stated an issue, referred the reader to the

appendix for the facts and 'controlling legal authority', and listed cases without explanation."

See ECF No. 31, Exh. 49 (Ruling Denying Review).

As noted by the Supreme Court of Washington, Mr. Cencich was represented by

counsel on appeal who briefed the case, he was permitted to file a statement of additional

grounds, and he had only himself to blame for his failure to file a statement conforming to the

requirements of RAP 10.10.  ECF No. 31, Exh. 49.

There is no federal right to pursue pro se claims on direct appeal.  *Martinez v. Court of

Appeal of Calif.*, 528 U.S. 152, 158-64 (2000).  Therefore, even if Mr. Cencich could show that

his ability to pursue his appeal pro se had somehow been hampered, there is no constitutional

violation under clearly established federal law.  Therefore, he is not entitled to relief under 28

U.S.C. § 2254(d) and this claim should be denied.

## CERTIFICATE OF APPEALABILITY

A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district

court's dismissal of his federal habeas petition only after obtaining a certificate of appealability

from a district or circuit judge.  A certificate of appealability may issue only where a petitioner

has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. §

2253(c)(3).  A petitioner satisfies this standard "by demonstrating that jurists of reason could

disagree with the district court's resolution of his constitutional claims or that jurists could

conclude the issues presented are adequate to deserve encouragement to proceed further."

*Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).   Under this standard and based on a thorough

review of the record and analysis of the law in this case, this Court concludes that Mr. Cencich is

not entitled to a certificate of appealability with respect to this petition.

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends that Mr. Cencich's

habeas petition be **denied**.  Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the

parties shall have fourteen (14) days from service of this Report and Recommendation to file

written objections.  See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver

of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985).

Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the

matter for consideration on **September 21, 2012**, as noted in the caption.


**DATED** this   6th   day of September, 2012.


Karen L. Strombom
United States Magistrate Judge


REPORT AND RECOMMENDATION - 36